```
                  IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| HEATHER KASE, | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 07-1715 (JBS) |
| v. | |
| SEAVIEW RESORT & SPA, et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Eugene D. McGurk, Jr., Esquire
Regina Mary Foley, Esquire
RAYNES, MCCARTY, BINDER, ROSS & MUNDY, ESQS.
116 White Horse Pike
Haddon Heights, NJ 08035
    Counsel for Plaintiff Heather Kase

Paul F. Clark, Esquire
WADE, CLARK & MULCAHY, ESQS.
917 Mountain Avenue
Mountainside, NJ 07092
    Counsel for Defendants Marriott Hotel Services, Inc. and
    Lasalle Hotel Operating Partnership, L.P.

**SIMANDLE**, District Judge:

This action had its genesis in the tragic death of Pennsylvania resident Nathan E. Kase, who became intoxicated while at the Marriott Seaview Resort & Spa in Galloway, New Jersey, fell down a flight of stairs at the hotel, and died several weeks later. He left behind two very young children and his wife, Heather Kase, the plaintiff in this matter both individually and as administrator of the Estate of Nathan Kase and administrator ad prosequendum of that Estate ("Plaintiff").

Plaintiff asserts wrongful death and survivorship claims on behalf of her late husband.  At issue before the Court, however, are not the circumstances of Mr. Kase's death, but the law to be applied to Plaintiff's pursuit of a remedy for that death.

Defendants Marriott Hotel Services, Inc. and LaSalle Hotel Operating Partnership, L.P. ("Defendants") have brought this motion for partial summary judgment on the choice of law to be applied to Plaintiff's request for damages [Docket Item 32].[1] Plaintiff's complaint seeks the application of the Pennsylvania Wrongful Death Act and Survival Act, while Defendants urge the Court to apply the New Jersey Wrongful Death Act and Survival Act.  The Court, having considered the matter and for the reasons set out below, finds that New Jersey law should be applied to the calculation of damages in this litigation.

## I.   BACKGROUND

### A.   Factual Allegations

Plaintiff's complaint chronicles the events that allegedly led to Nathan Kase's death.[2]  On April 15, 2005, Mr. Kase arrived at the Seaview Resort & Spa in Galloway, New Jersey ("Seaview Resort" or "hotel"), for a weekend business function organized by

---

[1] Not in dispute, and thus not at issue before the Court, is the application of New Jersey's law to determining liability. (Pl. Opp'n at 1.)

[2] For the purpose of this motion, Defendants do not dispute the facts as set forth in Plaintiff's complaint and brief in opposition to Defendants' motion for partial summary judgment.

his employer, the law firm of Wolf, Block, Schorr and Solis-Cohen, LLP ("Wolf Block"). (Compl. ¶ 31.) This trip came after lengthy correspondence between Seaview Resort, which is owned and operated by Defendants, and Wolf Block's Philadelphia office. (Pl. Opp'n at 2-3.) The Complaint alleges that on the evening of Mr. Kase's arrival, he attended an event where hotel employees served him multiple alcoholic beverages, after which he went to the hotel lounge, where hotel employees served him more alcoholic drinks even though he was visibly intoxicated. (Compl. ¶¶ 32-34.) Finally, Mr. Kase left the lounge to head downstairs to the hotel's game room, which required him to navigate what Plaintiff describes as a stairway rendered hazardous by poor design and maintenance. (Id. ¶¶ 35-36.) Mr. Kase proved unable to climb down the stairs, and instead fell down the flight of stairs and landed at the bottom. (Id. ¶ 39.) As a result of this fall, he suffered severe injuries and had to be transported to Atlantic City Hospital, where testing showed that he had a blood alcohol content of 248 milligrams per liter. (Id. ¶¶ 38-39.) On May 10, 2005, Mr. Kase died, allegedly as a result of his fall at Seaview Resort. (Id. ¶ 38.)

At the time of his death, Mr. Kase and his wife and children were residents of Philadelphia, Pennsylvania. (Id. ¶ 5.) Plaintiff now resides in Atlanta, Georgia. (Id. ¶ 1.) Defendant Marriott Hotel Services, Inc. is incorporated in Delaware and has

its principal place of business in Maryland.  (Id. ¶ 9; Answer ¶ 9.)  Defendant LaSalle Hotel Operating Partnership is a Delaware limited partnership, also with its principal place of business in Maryland.[3]  (Compl. ¶ 14; Answer ¶ 14.)  Plaintiff alleges Defendants engage in extensive advertising for the Seaview Resort in and around Philadelphia.  (Pl. Opp'n at 2-3.)

### B. Procedural History

Plaintiff filed her complaint in this matter on April 12, 2007, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332.  In her complaint, she sets forth a wrongful death claim (Count I), a survival action (Count II), and a claim for loss of consortium (Count III).  She further asks that the Court apply Pennsylvania law to her wrongful death and survival actions.  Defendants responded, as explained above, with the instant motion for partial summary judgment on choice of law.

## II. DISCUSSION

### A. Standard of Review

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In deciding whether there is a disputed issue of material

---

[3] Originally, Plaintiff brought suit against eleven separate defendants, but by operation of a Consent Order (mentioned by the parties but not appearing upon the docket) and a Stipulation of Dismissal without prejudice [Docket Item 13], only the two named defendants remain.

fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).  In this motion for partial summary judgment to determine choice of law, the pertinent facts are those necessary to apply the interest analysis test, as described below, and those facts are not in dispute.

### B.  Choice of Law

In a diversity case, choice of law is governed by the rules of the forum state -- in this case, New Jersey.  Warriner v. Stanton, 475 F.3d 497, 499-500 (3d Cir. 2007) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).  Having rejected the strict lex loci delicti rule for tort cases, New Jersey applies the more flexible governmental-interest approach to choice of law questions.  Id. at 500; Lebegern v. Forman, 471 F.3d 424, 428 (3d Cir. 2006).  This analysis seeks "to determine

which state has the greatest interest in governing the specific issue that arises in the underlying litigation." Erny v. Estate of Merola, 792 A.2d 1208, 1212-13 (N.J. 2002). New Jersey draws from the Restatement (Second) of Conflict of Laws to use an issue-by-issue approach -- an approach the New Jersey Supreme Court applies equally to determining the law governing damages as to liability law. Lebegern, 471 F.3d at 428 (citing Erny, 792 A.2d at 1213). In the end, New Jersey will apply the law of the state with the greatest policy interest in the litigation. Fu v. Fu, 733 A.2d 1133, 1138 (N.J. 1999).

The governmental-interest test consists of two prongs. Lebegern, 471 F.3d at 428.

> First, we must determine whether there is an actual conflict. [Gantes v. Kason Corp., 679 A.2d 106, 109 (N.J. 1996)]. If there is not an actual conflict, the inquiry is over and, because New Jersey would apply its own law in such a case, a federal court sitting in diversity must do the same. See Curtis T. Bedwell & Sons, Inc. v. Geppert Bros., Inc., [] 655 A.2d 483, 484-85 ([N.J. Super. App. Div.] 1995) (explaining "false conflict" situation) (citing Gilbert Spruance v. Pa. Mfrs. Ass'n Ins. Co., [] 629 A.2d 885 ([N.J.] 1993)). The second prong of the governmental-interest test requires us to assess the interests each state has in applying its own law and determine which state has the most significant relationship to the parties and the event. [Fu, 733 A.2d at 1138].

Id.

    1.    Actual Conflict

With regard to the wrongful death claim, the Court's analysis ends with the first prong of the New Jersey test, for

there is no actual conflict between New Jersey's Wrongful Death Act, N.J. Stat. Ann. § 2A:31, and Pennsylvania's Wrongful Death Act, 42 Pa. Cons. Stat. § 8301.[4]  Capone v. Nadiq, 963 F. Supp. 409, 412 n.1 (D.N.J. 1997); Amoroso v. Burdette Tomlin Mem'l Hosp.; 901 F. Supp. 900, 902 (D.N.J. 1995); Cannon v. Hilton Hotels Corp., 664 F. Supp. 199, 199 (E.D. Pa. 1987).  Rather, the two statutes are virtually identical.  N.J. Stat. Ann. § 2A:31, 42 Pa. Cons. Stat. § 8301.  As a consequence, New Jersey's law will be applied to Plaintiff's wrongful death claim for damages. See Lebegern, 471 F.3d at 428.

Plaintiff's survival claim presents a more difficult issue, because parties agree, as does the Court, that there is an actual conflict between the New Jersey Survival Act, N.J. Stat. Ann. 2A:15-3, and the Pennsylvania Survival Act, 42 Pa. Cons. State. §

---

[4] The Court rejects Plaintiff's assertion that these two statutes are applied differently.  Plaintiff relys on Green v. Bittner, 424 A.2d 210 (N.J. 1980) for the proposition that New Jersey requires a plaintiff to provide the jury more guidance in calculating damages.  (Pl. Opp'n at 5.)  Green itself does not support this argument.  Though Green focused on the very particular and difficult scenario, not present here, of calculating damages in a wrongful death suit by a parent for the loss of their child, even in that circumstance the court found "when an infant child dies and loss of prospective services is allowed to the parents, the proof that suffices is the parent-child relationship and what we assume the jury can conclude from that relationship alone."  Green, 424 A.2d at 217. Though an expert in damages "is obviously desirable" in such a case, given the complicated task of calculating prospectively the value of a child to her parents, it is not "legally necessary." Id. at 218.  Nothing in Green suggests that under Pennsylvania law a jury has less freedom to measure damages in wrongful death cases than under New Jersey law.  Id.

7

8302.  Lebegern, 471 F.3d at 429-31.  While Pennsylvania permits a survival plaintiff to pursue "[a]ll causes of action" after death, including lost prospective earnings, in New Jersey, damages in such a claim are limited to "all reasonable funeral and burial expenses in addition to damages accrued during the lifetime of the deceased."  N.J. Stat. Ann. 2A:15-3, 42 Pa. Cons. State. § 8302.  Thus, under New Jersey law, a survival plaintiff may not seek damages for prospective earnings, while under Pennsylvania law, a plaintiff has this remedy.  N.J. Stat. Ann. 2A:15-3, 42 Pa. Cons. State. § 8302.  The impact of the distinction is significant, especially in a case such as this one, where the deceased was young and with a promising legal career ahead of him.

        2.    Governmental-Interest Analysis

Having found an actual conflict between New Jersey and Pennsylvania law on survival damages, the Court must now find the more interested state.  The New Jersey courts point to five factors, drawn from the Restatement (Second) of Conflict of Laws § 145 cmt. B), that guide the governmental-interest analysis: (1) interstate comity; (2) the interests of the parties; (3) the interests underlying the substantive body of law; (4) the interests of judicial administration; and (5) the competing interests of the states.  Lebegern, 471 F.3d at 428-29 (citing Fu, 733 A.2d at 1140-41).  Of the five, the fifth factor -

states' interest - is the most significant.  Id. at 429 (citing Erny, 792 A.2d at 1217).

Beyond these broad considerations, in the case of an alleged tort, the four most important contacts are: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered.  Id. (citing Fu, 733 A.2d at 1142).  As a consequence,

> In personal injury cases, the place of the injury is important, and when both the conduct and the injury occur in the same place, that jurisdiction's law generally will apply except in those rare instances where another jurisdiction has a demonstrably dominant interest and no policy of the situs state is frustrated by application of the sister state's policy.

Id. (quoting Erny, 792 A.2d at 1217-18); see Warriner, 475 F.3d at 503.

In the present case, New Jersey is both the place of the injury and the place of the conduct.  With the same location for the injury and the conduct, the Court must determine whether this is one of the "rare" circumstance where another state's law should be applied despite these powerful connections to New Jersey.  See Lebegern, 471 F.3d at 431.  To do so, it is necessary to determine the policy interests behind the survival claim law in Pennsylvania and New Jersey.

In <u>Lebegern</u>, the Third Circuit applied this analysis to a similar circumstance and concluded that New Jersey, and not Pennsylvania, law should apply to a Pennsylvania resident's survival claim arising out of a tort that occurred in New Jersey. 471 F.3d at 431-35.  <u>Lebegern</u> also arose of out of the tragic death of a Pennsylvania resident, who was killed by a New Jersey domiciliary and resident in a car accident in New Jersey, where the Pennsylvania decedent had come to shop.  <u>Id.</u> at 427.  The court of appeals, after finding there was an actual conflict between the New Jersey and the Pennsylvania survival law, <u>id.</u> at 429-31, and noting the presumption that New Jersey law should apply because the conduct and the injury occurred in New Jersey, <u>id.</u> at 431, defined the policy concerns behind the two statutes at issue.  <u>Id.</u> at 431-34.  Pennsylvania "has a strong and clear interest in providing full recovery in survival actions," while New Jersey has a "comprehensive scheme of recovery" meant to work in concert with its Wrongful Death Act.  <u>Id.</u> at 431-32.  New Jersey seeks "to ensure proper redress by next of kin and the estate of the deceased" but also intends "to avoid allowing multiple recoveries for the same loss."[5]  <u>Id.</u> at 432.

---

[5]
> Damages in a wrongful death action [under New Jersey law] may include "the loss of expected financial contribution and the pecuniary loss of future services, companionship and advice."

<u>Capone</u>, 963 F. Supp. at (quoting <u>Green</u>, 424 A.2d at 210).

With these competing policies in mind,[6] the Third Circuit was led by choice of law norms that favored the application of New Jersey law.  The appeals court noted the presumption that the forum state's law should be applied if both states are interested in the application of its law and the application of the foreign state's law would frustrate the intent of the forum state.  Id. at 433.  The Third Circuit emphasized that "[w]hen a person chooses to travel across state lines, he should expect the laws of the place in which he is located to govern his transactions."  Id.  It is for this reason, the court explained, that the place of the injury is particularly significant if the location was not fortuitous, but rather the product of a planned excursion.  Id.

---

[6] The Third Circuit explicitly rejected Plaintiff's argument that the policy behind Pennsylvania's survival law is more robust than New Jersey's policy because there is no definitive statement of the New Jersey statute's purpose from the legislature or the New Jersey Supreme Court.  The court of appeals squarely addressed this concern and dispelled it:

> Although it certainly would be easier to support the application of New Jersey law if there was legislative history or caselaw from New Jersey clearly setting forth the purposes of the Survival Act, we believe that in the absence of such evidence of intent it is proper for a federal court sitting in diversity to find the purposes behind legislation by considering which entities or parties naturally benefit from a legislative scheme. This is true not only because it is logical to assume that a legislature is cognizant of the natural consequences of its actions, [] but also because legislative history from state legislatures is often sparse.

Lebegern, 471 F.3d 434 (internal citations omitted).

(citing <u>Blakesley v. Wolford</u>, 789 F.2d 236, 243 (3d Cir. 1986)). The appeals court concluded:

> In light of the fact that both New Jersey and Pennsylvania are interested, and the fact that general notions of comity militate toward applying the law of the state where the accident occurred when the defendants are residents of that state, we hold that a New Jersey court would apply New Jersey law in this case.

<u>Id.</u>

The Court finds <u>Lebegern</u> to be not only persuasive, but binding.  In all material aspects, the circumstances are the same.  Mr. Kase also chose to come to New Jersey, and while there also suffered from the allegedly tortious activity and injury that led to his death.  <u>See</u> <u>Lebegern</u> 471 F.3d at 427.  This case likewise does not present the "rare instance" when foreign law should apply despite the mutual location for the conduct and injury, because Pennsylvania does not have a "demonstrably dominant interest" and New Jersey policy would be frustrated by its application.  <u>Id.</u> at 429.  For the reasons discussed below, the facts of this case do not upset the balance of interests found in <u>Lebegern</u>.  Therefore, the Court finds that New Jersey's Survival Act should be applied to Plaintiff's survival damages claims.

Plaintiff attempts to distinguish Lebegern on two grounds.[7] First, Plaintiff argues that Defendants are not residents, because they are a Delaware corporation and a Delaware partnership whose principle places of business are in Maryland, and therefore New Jersey has limited interest in the application of New Jersey law on these Defendants.  Second, Plaintiff points to Defendants' efforts to draw business from Pennsylvania and to bring Wolf Block to their hotel.  These facts, Plaintiff argues, tip the balance in favor of applying Philadelphia law.  The Court finds neither argument persuasive.

The meaning of the term "resident" in New Jersey law is a thorny issue.  See Caballero v. Martinez, 897 A.2d 1026, 1032 (N.J. 2006) ("Under New Jersey law, the term resident, although present in many statutes, is not fixed in meaning.  Instead, courts define the term by looking to the purpose of the statute and the context in which the term is found."); Am. Employers' Ins. Co. v. Elf Atochem N. Am., Inc., 725 A.2d 1093, 1098 (N.J. 1999) ("'Residence' is a word with many meanings.")  It is particularly slippery in the context of corporations.  See Am.

---

[7] To the extent Plaintiff also relies on the district court cases Foster v. Maldonado, 315 F. Supp. 1179 (D.N.J. 1970) and Pollock v. Barrickman, 610 F. Supp. 878 (D.N.J. 1985) to support the argument the Pennsylvania law should be applied to this survival claim, the Court will not be guided by this case law.  The Third Circuit in Lebegern explicitly rejected the approach taken in these two cases and the Court will not be led by past errors.  471 F.3d at 430-31.

Employers, 725 A.2d at 1098-99 (noting that "the Federal Judicial Code provides that a corporation is considered a resident of any judicial district where it is incorporated, licensed to do business, or doing business," but ultimately concluding that a corporation's "residence" for the purposes of the New Jersey Property-Liability Insurance Guaranty Association Act was the corporation's primary place of business).

The Court does not find it necessary to plunge into this morass, for the Court is convinced that New Jersey has a compelling interest in applying its law to defendants who own and operate New Jersey businesses, regardless of whether or not they are labeled "residents." See Colley v. Harvey Cedars Marina, 422 F. Supp. 953, 955 (D.N.J. 1976), cited with approval in Lebegern, 471 F.3d at 431, 434-35; O'Connor v. Busch Gardens, 605 A.2d 773, 775 (N.J. Super. Ct. App. Div. 1992), cited with approval in Fu, 733 A.2d at 1145, 1147. Defendants established and ran their hotel in New Jersey under the reasonable expectation that this business and its operations would be governed by New Jersey law. See Lebegern, 471 F.3d at 433. Likewise, New Jersey is reasonable to expect that its laws will be applied to establishments within its boundaries. See id.

The Court finds support for its decision in case law. In Colley, Judge Brotman found that New Jersey had an interest in the application of its law to an Indiana corporation which did

14

business in New Jersey and was the manufacturer of the boat involved in the drowning of two men off the coast of New Jersey.[8] 422 F. Supp. at 955. Judge Brotman, after weighing the interests involved, applied New Jersey, and not Pennsylvania, survival law to the plaintiff's claim against all three defendants in the case, including the Indiana corporation -- a result cited with approval by the Third Circuit in Lebegern. Id. at 957. Similarly, in O'Connor, the New Jersey Appellate Division found that Virginia law should apply in a case where the plaintiff was injured at a Virginia amusement park owned by the defendant, a Delaware corporation. 605 A.2d at 775. In fact, the New Jersey court dismissed as "irrelevant" the defendant's state of incorporation, instead emphasizing Virginia's "significant

---

[8] Plaintiff quotes Colley for the principle that "New Jersey is not interested in protecting all defendants but only its own residents." 422 F. Supp. at 955. It is evident, when read in context, that Judge Brotman used the term "residents" broadly enough to encompass Defendants in this case. The entire relevant passage reads:

> The New Jersey legislature, on the other hand, has adopted a law that gives very limited benefits to decedents' estates. The protection of defendants from large recoveries has taken priority. New Jersey is not interested in protecting all defendants but only its own residents. Because both Harvey Cedars and White's Shipbottom are New Jersey corporations and because Viking Boat Co. [the Indiana corporation] does business in New Jersey, the interest of that state would be furthered by application of its law in this case. New Jersey is also an interested jurisdiction.

Id.

15

interest in deterring unsafe property conditions and unsafe conduct of people and enterprises" within its borders.  Id. Taken together, both Colley and O'Connor illustrate the principle that New Jersey has a powerful interest in the application of its laws to defendants, like the present defendants, who own and operate businesses in New Jersey, when the allegedly tortious conduct and the resultant injury both occur at that New Jersey business.  Colley, 422 F. Supp. at 955; O'Connor, 605 A.2d at 775.

Just as Defendants' state of incorporation and primary places of business do not change the balance of interest in favor of Pennsylvania law, so the Court concludes that Defendants' efforts to win business in Pennsylvania do not call for the application of Pennsylvania law in this case.  The significant factors are not altered by any promotional efforts made by Defendants in Philadelphia.  Most importantly, all of the contact between Mr. Kase and the Defendants occurred in New Jersey, the product of Mr. Kase's conscious choice to travel to New Jersey for business and pleasure.  See Warriner, 475 F.3d at 503 (finding appropriate the application of Delaware law by a district court in a tort case where the district court "correctly placed special emphasis . . . on the fact that all of the contact between [the plaintiff] and [the doctor who allegedly committed malpractice] occurred in Delaware").

16

In coming to this conclusion, the Court is also guided by the New Jersey Supreme Court in Fu, where it applied New York law on vicarious liability to a claim arising out of a rental car accident, though the rental contract was made in New Jersey between New Jersey plaintiffs and a New Jersey business.  733 A.2d at 1136, 1147-50.  The court found that the fact that the contract was made in New Jersey had "minimal significance," given that the "event giving rise to vicarious liability was not the rental transaction, but the automobile accident, which occurred in New York."  Id. at 1145.  The court further observed that the contract itself was unrelated to the choice of law question, "as it did not specify a forum state to govern any disputes in the event of an accident."  Id.  In the same way, neither the negotiations between Defendants and Wolf Block nor any advertising by Seaview Hotel in Philadelphia, gave rise to Plaintiff's survival claim - that claim arises from Mr. Kase's consumption of alcohol and fall in April, 2005 at the New Jersey hotel.  See id.  Further, the agreement between Wolf Block and the hotel does not dictate the law to be applied in the event of an accident, and so is not related to the question before this Court.  See id.  With this in mind, the Court finds that any efforts made by Defendants to market the hotel to Philadelphia residents, along with the hotel's negotiations and planning with Wolf Block, do not outweigh New Jersey's compelling interest in

17

the application of its survival claim jurisprudence to an accident that occurred at a business within its borders.[9]  See Lebegern, 471 F.3d at 433.

In summary, the Court will apply New Jersey's wrongful death statute because it finds there is no actual conflict between New Jersey and Pennsylvania law in this field and is thus bound to apply the law of the forum state.  The Court will also apply New Jersey's survival statute, because both states have an interest in the application of their conflicting law to the present suit, but the allegedly tortious conduct and resultant injury occurred in a business in New Jersey, and under Lebegern, New Jersey's interest prevails over Pennsylvania's stake in this dispute.  See 471 F.3d at 431-35; see also, Warriner, 475 F.3d at 503-04.

---

[9] Having concluded that even if there were extensive negotiations with in Wolf Block's Philadelphia office, and even if Defendants advertised heavily in Pennsylvania, this would not call for the application of Pennsylvania's Survival Act, the Court finds the further discovery into these areas is unnecessary to entry of summary judgment on this issue.

**III. CONCLUSION**

     For the foregoing reasons, the Court finds that New Jersey's Survival Act and Wrongful Death Act should be applied to the determination of damages in the present case. The Court consequently will grant Defendants' motion for partial summary judgment on choice of law. The accompanying Order will be entered.


**February 20, 2009**                          **s/ Jerome B. Simandle**
Date                                            JEROME B. SIMANDLE
                                                       United States District Judge